UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:16CR179 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| BRANDON CAUDLE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of *pro se* defendant Brandon Caudle ("Caudle") for a judicial recommendation or order regarding halfway house placement (Doc. No. 16 ["Mot."]). United States of America (the "government") filed an opposition, in part, to the request (Doc. No. 19 ["Opp'n"]). Also before the Court is Caudle's renewed motion for a halfway house recommendation (Doc. No. 21 ["Ren. Mot."]), premised on the passage of the First Step Act. The government opposes the renewed motion (Doc. No. 22 ["Ren. Opp'n"]), and Caudle has filed a supplement to his renewed motion (Doc. No. 23 ["Suppl."]).

I. **BACKGROUND**

On October 11, 2016, the Court sentenced Caudle to a term of imprisonment of 41 months on Counts 1 through 3 of an information that charged him with mail fraud, in violation of 18 U.S.C. § 1341. (Doc. No. 10 (Judgment).) The underlying charges related to three fraudulent schemes that Caudle operated while housed as a prisoner at FCI Elkton. The first targeted creditors of prisoners, including Caudle's own creditors, and sought to clear certain charges by

falsely claiming that the prisoners were victims of identity theft. The second scheme targeted restaurants, wherein Caudle posed as relatives and sought to obtain gift cards by falsely claiming poor service. The third scheme targeted the Untied States Postal Service and involved fraudulently causing the USPS to deliver packages and letters without providing the proper postage. (Doc. No. 1 (Information); *see* Doc. No. 4 (Rule 11(c) Plea Agreement).)

Given Caudle's admitted long history of criminal conduct, primarily involving identity theft and other types of fraud, the Presentence Investigation Report ("PSR") determined that Caudle was a Criminal History Category V offender. In accordance with the parties' joint recommendation, the Court sentenced Caudle to the lowest end of the applicable guideline range. His projected release date is June 4, 2020. (https://www.bop.gov/inmateloc/ (last visited Oct. 7, 2019)).

Approximately 18 months into his sentence, Caudle filed his original motion for an order or a recommendation that the Bureau of Prisons ("BOP") place him in a particular halfway house in North Carolina for no less than 270 days. Citing his lengthy criminal history, numerous supervised release violations, and prison discipline, Caudle argued that he would benefit from an extensive placement in a halfway house to help him reintegrate into society. He insisted that "the Court and the [BOP] would be hard pressed to find an individual who is at a higher risk of recidivism." (*Id*. at 132.[1])

The government opposed the motion, in part, noting that the Court lacked the authority to order the BOP to make any particular placement. As for a recommendation, the government argued that the BOP was in the best position to determine the appropriateness of any such

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

placement. Nonetheless, it suggested that the Court make a broad recommendation that Caudle be placed in a halfway house of the BOP's choosing for a significant period of time to be determined by the BOP.

Caudle now renews his motion in light of the passage of the First Step Act. In particular, he relies on 18 U.S.C. § 3621(b), which promotes having the BOP place a prisoner, taking other considerations into account, "in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence." That provision also makes clear that the BOP's designation as to where to designate an offender "is not reviewable by any court." *Id*. However, in his supplement, he appears to abandon his request to be placed in a facility in North Carolina, "where [he] was born and raised[,]" and has advised that he intends to "release to the Northern District of Ohio." (Suppl. at 269–70).[2] The government renews its opposition to Caudle's request.

## II. DISCUSSION

The BOP, pursuant to 18 U.S.C. § 3624(c)(1) as amended by the Second Chance Act, Pub. L. No. 110-199, § 251(a), 122 Stat. 657 (2008), may place an inmate in community confinement for no longer than twelve months at the end of his or her sentence. *See Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009). The BOP determines penal facility placement based on several factors, including statements made by the sentencing court. *United States v. George*, No. 14-20119, 2018 WL 2148179, at *2 (E.D. Mich. May 10, 2018) (citing 18 U.S.C. § 3621(b)). While a court may make non-binding recommendations for placement in a residential

---

[2] In his supplement, he represents that his case manager informed him that if he elected to be released to a jurisdiction in North Carolina, he would receive no more than 90 days of placement in a halfway house. According to Caudle, his case manager, therefore, suggested he consider releasing into another judicial district. (*Id*. at 269.)

re-entry center ("RRC"), the BOP has the exclusive authority to determine if an inmate should be placed in an RRC and, if so, for how long. 18 U.S.C. § 3621(b); *See Martin v. United States*, No. 05-17, 2008 WL 3546433, at *1–2 (W.D. Pa. Aug. 12, 2008).

Caudle is correct that halfway house place is a mechanism designed to reduce recidivism by assisting the prisoner in making an effective transition back into society. *See United States v. Ahmed*, 1:07CR00647, 2017 WL 5166427, at *1 (N.D. Ohio Nov. 8, 2017) (citing BOP Director's Memorandum for Chief Executive Officers: "*Revised Guidance for Residential Reentry Center (RRC) Placements*")). In *Ahmed*, the court agreed to issue a judicial recommendation for RRC placement based on defendant's extensive record of classes taken while incarcerated and accumulation of nearly two years of good-time credit. *Id*. at *2-3.

The limited record before the Court in this case paints a much different picture. While Caudle provides evidence that he has taken some classes while incarcerated, his time in prison—by his own admission—has also been marred by prison rule violations and resulting punishment. (*See* Doc. No. 16-13 (class transcript); Doc. No. 14 (Inmate Disciplinary Record).) Under these circumstances, the Court believes that the BOP—which is more familiar with all of the circumstances surrounding Caudle's incarceration—is in a better position to assess the appropriateness of any RRC placement. Accordingly, the Court declines to make any recommendation regarding halfway house placement.

For these reasons, Caudle's motion and renewed motion for an order or judicial recommendation regarding halfway house placement are DENIED.

**IT IS SO ORDERED**.

Dated: October 9, 2019

                                                      **HONORABLE SARA LIOI**
                                                      **UNITED STATES DISTRICT JUDGE**